## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KIMBERLY STARLING and NICKOLAS HAGMAN, individually, and on behalf of all others similarly situated, )<br><br>Plaintiffs, )<br><br>v. )<br><br>CHARTER COMMUNICATIONS, INC., )<br><br>Defendant. ) | Case No. 3:21-cv-01323-VAB<br><br><br>**JURY TRIAL DEMANDED** |

## FIRST AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs Kimberly Starling and Nickolas Hagman, individually, and on behalf of all others similarly situated, and for their First Amended Class Action Complaint against Defendant Charter Communications, Inc., state:

### Background, Parties, Jurisdiction And Venue

1. Plaintiffs Kimberly Starling ("Starling") and Nickolas Hagman ("Hagman") (collectively "Plaintiffs") bring this case to protect the privacy rights of themselves and a class of similarly situated people who were called on their cell phones and residential phones by Defendant Charter Communications, Inc. ("Charter"). Charter called Plaintiffs and the putative class members on their cell phones without first obtaining the recipients' prior express written consent. Further, the calls were made after Starling and the putative class members registered their phone numbers on the National Do Not Call Registry.

2. In the early 1990s, Congress enacted the Telephone Consumer Protection Act ("TCPA") to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls. A leading sponsor of the TCPA described unwanted telemarketing calls as "the scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

3.      The TCPA protects people from receiving phone calls that use a prerecorded or artificial voice on their cell phones or residential phones by requiring the caller to first obtain the recipient's "prior express written consent."

4.      The TCPA also affords special protections for people who registered their phone numbers on the National Do Not Call Registry. Specifically, the TCPA prohibits sellers and telemarketers from placing telemarketing calls or causing telemarketing calls on their behalf to phone numbers that are registered on the National Do Not Call Registry unless the telemarketer has an established business relationship with or prior express written consent from the called party.

5.      To afford additional protections from telemarketing calls for persons with Texas area codes, the Texas legislature has enacted the Texas Telephone Solicitation Act ("Texas TSA"), codified at Section 302.101 *et seq.* of the Texas Business and Commercial Code. The Texas TSA prohibits businesses from engaging in telephone solicitations in Texas or to consumers located in Texas unless the business first obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

6.      In addition, the Illinois Automatic Telephone Dialers Act ("IATDA"), 815 ILCS 305/1, *et seq.* protects Illinois consumers from unsolicited and unwanted autodialed phone calls.

7.      From January 2021 until October 2021, approximately 42.8 billion robocalls were placed in the United States. RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited November 12, 2021). The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission ("FCC") levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected*

*$6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

8. By placing, or causing to be placed, the calls at issue, Charter has violated the privacy and statutory rights of Plaintiffs and Class members, and Plaintiffs and Class members have sustained an injury in fact.

9. Starling is an individual who resides in and is a citizen of Texas.

10. Hagman is an individual who resides in and is a citizen of Illinois.

11. Plaintiffs bring this action on behalf of themselves and all others similarly situated.

12. Charter is a Delaware corporation that has a principal place of business in Connecticut. Charter has been in good standing to transact business at all times relevant to this Complaint.

13. Charter transacts business in Connecticut, Texas, Illinois and throughout the United States.

14. This Court has personal jurisdiction over Charter because it is at home in Connecticut, and Charter solicits business in Connecticut, conducts business in Connecticut, and otherwise has sufficient minimum contacts with Connecticut, and such contacts are continuous and systematic. Furthermore, Plaintiffs' and Class members' claims arise out of unlawful conduct designed and carried out by Charter while in Connecticut.

15. The Court has subject matter jurisdiction under 28 U.S.C. § 1331, because the case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Charter resides and is at home in this District, and a substantial part of the events and omissions and that give rise to this class action took place in this District.

**Common Factual Allegations**

17. Charter sells cable, internet and phone services nationwide. The brand name under which Charter sells these services is "Spectrum."

18. Charter markets its products and services, in part, through placing telephone calls to cellular and residential telephones of consumers.

19. Charter, and, if applicable, its agents and vendors, placed phone calls using artificial or prerecorded voice calls *en masse* to market Charter's products and services.

20. Charter also called phone numbers *en masse* that were registered on the National Do Not Call Registry.

21. Charter directly placed the phone calls itself and is directly liable for each and every phone call made to Plaintiffs and the Class members. The only business identified during the phone call was Spectrum, Charter's trademarked product and business. Had a third party placed the phone call, the law required that the third party identify itself. *See* 47 C.F.R. § 64.1200(b)(1) (requiring prerecorded or artificial voice message to state clearly at the beginning the identity of the entity responsible for initiating the call).

22. In the alternative, to the extent Charter and its agents violated 47 C.F.R § 64.1200(d)(4), and Charter hired telemarketers to place the calls on its behalf, Charter remains vicariously liable for such phone calls under the principles set out in *In re Dish Network, LLC*, 28 F.C.C. Rcd. 65741 (2013).

23. Charter directly participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct

of its employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

24. Charter's telemarketers had actual authority, implied or express, and apparent authority. On information and belief, Charter and its agents entered into written agreements where Charter controlled the timing, quantity, frequency, and geographic targets for its telemarketing campaign. Charter had final authority over scripts used, methods used, and quality control oversight. Charter allowed its telemarketing agents access to its internal systems and proprietary and/or lead information, including its customer relations management systems to transfer, input, edit, update, and review information contained thereon in real time. Charter allowed the telemarketers to use its trademarks, pricing information, and product names in the phone calls, and restricted how the telemarketers could act, with detailed guidelines regarding agents' authority to bind Charter. For example, Charter decided what services and products were sold and the terms that governed.

### *Starling Received Unwanted Automated Telemarketing Calls from Charter*

25. Starling is the owner of a cell phone. Her cell phone number is 817-XXX-6140.

26. Starling did not provide her cell phone number to be called by Charter before or at the time she received the calls at issue.

27. Starling had no prior business relationship with Charter before or at the time she received the calls at issue.

28. Starling never inquired of Charter about any products or services before or at the time she received the calls at issue.

29. Starling did not grant Charter prior express written consent to be called on her cell phone.

30. Starling registered her cell phone number on the National Do Not Call Registry on or about December 31, 2004.

31. On September 8, 2020, Starling received a prerecorded voice call from Charter or someone acting on its behalf. The prerecorded voice call mentions "bundling" services and states to "press 1" to be connected with a representative. Upon pressing 1, Starling was connected with a live representative. The representative stated, "thank you for showing your interest in cable, internet and phone." The representative further asked if Starling was interested in getting new services. The representative confirmed he was calling for "Spectrum." Starling told the representative to not call her again.

32. On January 11, 2021, Starling received a second prerecorded voice call from Charter or someone acting on its behalf concerning Spectrum services.

33. On information and belief, Starling had received additional unwanted calls from Charter after January 11, 2021.

34. Furthermore, on information and belief, Charter is not, and was not, at any time relevant to this Complaint, registered with the Texas Office of the Secretary of State to engage in telephone solicitation toward residents of Texas despite the obligation to be registered.

35. Nonetheless, Charter, or someone acting on its behalf, placed telemarketing calls to Starling on her Texas "817" area code while Starling was a resident of Texas.

### *Hagman Received Unwanted Automated Telemarketing Calls from Charter*

36. Hagman is the owner of a cell phone. His cell phone number is 608-XXX-8212.

37. Hagman did not provide his cell phone number to be called by Charter before or at the time he received the call at issue.

38. Hagman had no prior business relationship with Charter before or at the time he

received the call at issue.

39. Hagman never inquired of Charter about any products or services before or at the time he received the calls at issue.

40. Hagman did not grant Charter prior express written consent or any form of consent to be called on his cell phone.

41. Hagman received an unexpected, unwanted and unsolicited spam email to one of his email accounts on October 8, 2021, from spectrum@email.spectrum.com. The email promoted Charter's Spectrum cable and internet services and provided a button to click to order and a phone number to call.

42. Hagman noted and ignored the email.

43. On October 13, 2021, at approximately 11:47 a.m., Hagman's personal cell phone rang.

44. Hagman's cell phone identified the originating phone number as (608) 440-2923. The purported phone number contained an area code local to the region where Hagman's cell phone number is also registered.

45. Hagman answered the phone. There was an unnaturally long pause between the time Hagman answered the phone and when a prerecorded or artificial voice message began to play over the line.

46. The prerecorded or artificial voice promoted and advertised Charter's Spectrum cable or internet services.

47. Hagman listened long enough to ascertain the identity of the products or services being sold, offered, and marketed and then hung up.

**Direct and Vicarious Liability**

48. To the extent Charter outsources its unlawful robocalls to various agents, call centers and vendors, it is still liable for calls that violate the TCPA.

49. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (internal citations omitted).

50. Moreover, the May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id*. at 6587 n. 107.

51. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593.

52. Charter permitted, and enjoyed the benefits of agents, call centers and vendors' mass robocalling.

53. Charter acted as the principal, and the agents, call centers and vendors acted as its agent.

54. Charter is not permitted under the law to outsource and contract its way out of liability by directing and benefitting from unlawful robocalls made by agents, call centers and vendors.

55. To the extent the calls at issue were made by third parties, the calls were made with the permission (express and/or implied) of and for the benefit of Charter, which would render Charter vicariously liable.

56. To the extent the calls were made directly by Charter, Charter is directly liable for those calls.

***Charter's Unlawful Conduct Caused Injuries to Plaintiffs and Class Members***

57. Charter caused annoying, harassing and unwanted telemarketing phone calls to be made to Plaintiffs and the Class members in violation of the TCPA, intruded upon the seclusion of Plaintiffs and the Class members, and disregarded the protected right to be free from unsolicited telemarketing phone calls of those whose phone numbers were listed on the National Do Not Call Registry.

58. Charter's conduct caused Plaintiffs and the Class members to waste time addressing and/or otherwise responding to the unwanted robocalls.

59. Charter placed calls for the purpose of selling its Spectrum products and services.

## Class Allegations

60. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.

61. Starling and Hagman seek to represent a class defined as:

> **227(b) Class:** All persons in the United States to whose residential or cellular telephone numbers Charter or someone acting on its behalf made a phone call using prerecorded or artificial voice, which was not made with the person's prior express written consent from four years prior to the date of the filing of the original lawsuit to the date of class certification.

62. Starling seeks to represent a class defined as:

> **227(c) Class:** All persons in the United States who from four years prior to the date of the filing of this lawsuit to the date of class certification: (1) received more than one telephone call or text message from Charter or someone acting on its behalf during a 12-month period; (2) were registered on the Do Not Call Registry for more than 31 days at the time the calls were received; and (3) which telephone calls were not made with the person's prior express written consent, and with whom Charter had no prior or existing business relationship.

63. Starling seeks to represent a class defined as:

> **Texas Class:** All persons who reside in Texas and/or with a Texas area code who from two years prior to the date of the filing of this Complaint to the date of class certification: (1) received a marketing call from Charter (or someone acting on its behalf); and (2) at such time Charter has not obtained a registration certificate from the Office of the Texas Secretary of State.

64. Hagman seeks to represent an Illinois class defined as follows:

> **Illinois Class:** All persons who reside in Illinois and/or with an Illinois area code who from five years prior to the date of filing this Complaint to the date of class certification: (1) received one or more unsolicited phone calls from Charter (or someone acting on its behalf) using an autodialer; (2) which was not made with the person's prior express request; and, (3) with whom Charter had no prior or existing business relationship.

65. The following people are also excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Charter, Charter's

subsidiaries, parents, successors, predecessors, and any entity in which Charter or its parent has a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class(es); (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Charter's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

66. Plaintiffs reserve the right to add subclasses, or to amend the definitions of the proposed classes.

67. The members of the proposed classes are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people have been harmed by Charter's actions. The names and phone numbers of the members of the Classes are readily identifiable through records available to Charter or those acting on its behalf.

68. The putative class members have suffered damages in an amount such that it would make filing separate lawsuits by individual members economically infeasible.

69. On information and belief, Charter has called and continues to make telemarketing phone calls using prerecorded or artificial voices and autodialers in violation of the TCPA and IATDA. It is reasonable to expect that Charter will continue to make such calls unless enjoined.

70. Common questions of law and fact exist that predominate over any questions affecting only individual class members. The questions of law and fact common to class members include, but are not limited to:

    a. Whether Charter made phone calls using an artificial or prerecorded voice to the cellular and residential telephone numbers of Plaintiffs and the 227(b) Class members without obtaining their prior express written consent;

  b. Whether Charter placed calls to Starling and the 227(c) Class members after they were registered on the National Do Not Call Registry for more than 31 days;

  c. Whether Charter placed calls to Starling and the Texas Class members without obtaining a certificate from the Office of the Texas Secretary of State;

  d. Whether Charter placed calls to Hagman and the Illinois Class members using an autodialer without their prior express written consent or business relationship;

  e. Whether Charter's conduct violates the TCPA, 47 U.S.C. § 227(b);

  f. Whether Charter's conduct violates the TCPA, 47 U.S.C. § 227(c);

  g. Whether Charter's conduct violates the rules and regulations implementing the TCPA;

  h. Whether Charter's conduct violates § 302.101 *et seq* of the Texas TSA;

  i. Whether Charter's conduct violates the IATDA, 815 ILCS 305/1, *et seq.*;

  j. Whether Plaintiffs and the Class members are entitled to damages; and

  k. Whether Charter violated the TCPA knowingly or willfully warranting enhanced damages.

71. Plaintiffs' claims are typical of the claims of the putative class members because their claims arise from the same unlawful acts and practices that give rise to the claims of the Class members and are based on the same legal theories.

72. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class members. Plaintiffs' interests do not conflict with the interests of the Class members. Plaintiffs have retained lawyers who are competent and experienced in class actions, TCPA litigation, and consumer law. Plaintiffs and their counsel are aware of their responsibilities to the Class members and will discharge those duties.

73. A class action is superior to all individual lawsuits for this controversy. Joinder of all proposed members of the proposed class in one action is impracticable if not impossible and prosecuting hundreds or thousands of individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will allow recovery. Even if certain Class members had the resources to pursue individual litigation, that method would be unduly burdensome to the courts. Individual litigation could also result in inconsistent adjudications.

74. In contrast, a class action is superior to alternative methods for adjudicating the controversy because class certification promotes efficiency, economy of scale, and unitary adjudication resulting from supervision by a single court.

75. Charter has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

<u>**Count I**</u>
**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiffs and the 227(b) Class)**

76. Plaintiffs incorporate by reference the allegations of the previous paragraphs as if fully stated in this Count.

77. The TCPA states, in part:

> It shall be unlawful for any person within the United States . . .
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a . . . cellular telephone . . . ; [or]
>
> (B) to initiate any telephone call to any residential telephone line using an

> artificial or prerecorded voice to deliver a message without the prior express consent of the called party . . . .

47 U.S.C. §§ 227(b)(1)(A)(iii); 227(b)(1)(B).

78. The TCPA defines a "telephone solicitation" as a "call or message for the purpose of encouraging the purchase of goods, or services which is transmitted to any person." 47 U.S.C. § 227(a)(4).

79. The Federal Communications Commission's regulations implementing the TCPA provide that telephone solicitations cannot be made to a recipient without the recipient's "prior express written consent." *See* FCC 12-21, CG Docket 02-278 (effective October 16, 2013); 47 C.F.R. § 64.1200(a)(2).

80. The term "prior express written consent" as defined by the Code of Federal Regulations means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8)(i).

81. The TCPA provides for a private right of action and statutory damages of $500 per violation, and up to $1,500 if the violation is determined to be knowing or willful. 47 U.S.C. § 227(b)(3).

82. Charter made phone calls in violation of the TCPA because they were made using an artificial or prerecorded voice message to cellular and residential phones of Plaintiff and 227(b) Class members in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

83. Charter placed phone calls to the cellular and residential phone numbers of Plaintiffs and the 227(b) Class members without the prior express written consent.

84. Charter made phone calls in violation of the TCPA knowingly and willfully.

85. In addition, Plaintiffs and Class members may obtain an injunction to enjoin Charter's violations of the TCPA. 47 U.S.C. § 227(b)(3).

### Count II
### Violations of the TCPA, 47 U.S.C. § 227(c)
### (On behalf of Starling and the 227(c) Class)

86. Starling incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

87. The TCPA provides that is a violation of the law to make telemarketing phone calls to a phone number that is registered on the National Do Not Call Registry. Persons who receive more than one call on their phone number registered on the Do Not Call Registry "within any 12-month period by or on behalf of the same entity" may bring a civil action against the persons who made the calls and the persons on whose behalf the calls were made. *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

88. The TCPA provides statutory damages of $500 per violation and up to $1,500 per violation if the violations are determined to be knowing or willful. *See* 47 U.S.C. §§ 227(c)(5).

89. In addition, Plaintiffs and Class members may obtain an injunction to enjoin Charter's violations of the TCPA. *See* 47 U.S.C. §§ 227(c)(5)(A).

90. By making calls to the telephone numbers of Starling and the 227(c) Class members while their numbers were registered on the National Do Not Call Registry, Charter violated the TCPA, including, but not limited to, 47 U.S.C. § 227(c)(1) and its corresponding regulations.

91. Charter made the phone calls that violated the TCPA willfully and knowingly.

92. Starling and 227(c) Class members are entitled to damages of $500 per violation and up to $1,500 per violation if the Court finds that Charter willfully violated the TCPA.

## Count III
### Violations of the § 302.101 *et seq*. of the Texas TSA
### (On Behalf of Starling and the Texas Class)

93. Starling incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

94. Starling and the putative Texas Class members received all calls from Charter and are entitled to relief under Texas law.

95. Section 302.101 of the Texas TSA prohibits sellers from engaging in telephone solicitation from a location in this state or to a purchaser located in this state unless the seller obtains a registration certificate from the Office of the Secretary of State for the business location from which the solicitation is made.

96. Charter violated Section 302.101 of the Texas TSA when its representatives engaged in continuous and repetitive telephone solicitation of Plaintiff and the Texas Class members without obtaining a registration certificate from the Office of the Secretary of State.

97. Section 302.302(a) of the Texas TSA provides that a person who violates this chapter is subject to a penalty of up to $5,000 for each violation. Furthermore, §302.302(d) provides that the party bringing the action is also entitled to recover all reasonable cost of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney fees.

98. On information and belief, Charter has called and continues to place telemarketing calls without first obtaining a registration certificate from the Office of the Secretary of State. It is reasonable to expect that Charter will continue to make such calls absent this lawsuit.

## Count IV
### Violations of the IATDA, 815 ILCS 305/1, *et seq*.
### (On Behalf of Hagman and the Illinois Class)

99. Hagman incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

100. The equipment used by Charter to place phone calls to Hagman and Illinois Class members constituted an autodialer within the meaning of 815 ILCS 305/5(a). The device, machine, computer, or system used was and is capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message.

101. Charter's voice messages constituted recorded messages soliciting the sale of goods or services without live voice interaction.

102. Charter violated the IATDA by playing prerecorded messages placed by an autodialer to Hagman and Illinois Class members' telephone numbers.

103. Charter violated the IATDA by operating an autodialer in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number.

104. Hagman and Illinois Class members did not give Charter their prior consent, did not make any prior requests to be called, and were not in prior or existing business relationships with Charter.

105. Hagman and Illinois Class members were injured as a result of receiving the unwanted, unsolicited, and invasive calls within the meaning of the IATDA. Hagman and Illinois Class members suffered aggravation, nuisance, and an invasion of their privacy and their right to remain free from unwanted phone calls and telemarketing solicitations. Hagman and the Illinois

Class members also suffered lost time and use of their devices, as well as suffered a depleted battery life of their cellular telephone phones which required them to replenish the charge of their phones using electricity they had to pay for.

106. Hagman and the Illinois Class members seek actual and treble damages, and attorney's fees and costs, pursuant to 815 ILCS 305/30(c). In addition, Plaintiff and Illinois Class members seek $500 in statutory damages per violation, pursuant to 815 ILCS 305/30(c-5).

107. Charter's knowing conduct also constitutes an unlawful act under 815 ILCS 505/2Z, which provides Plaintiff and the Illinois Class members a right of action under 815 ILCS 505/10a and pursuant to which Charter and the Illinois Class members seek actual damages, injunctive relief, and other remedies available thereunder.

**Prayer For Relief**

WHEREFORE Plaintiffs, individually, and on behalf of all others similarly situated, request that the Court:

a. Enter an order pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying the proposed classes, appointing Plaintiffs as the class representatives, and appointing Kimmel & Silverman, P.C., Butsch Roberts & Associates, LLC, and Zimmerman Law Offices, P.C. as class counsel;

b. Enter judgment in favor of Plaintiffs and the 227(b) Class members for all damages and other relief available under the TCPA, including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Charter willfully violated the TCPA;

c. Enter judgment in favor of Starling and the 227(c) Class members for all damages and other relief available under the TCPA, 47 U.S.C. § 227(c), including injunctive relief, statutory damages of $500 per violation, and up to $1,500 per violation if Charter willfully violated the

TCPA;

  d. Enter judgment in favor of Plaintiffs and the Classes that enjoins Charter from violating the TCPA's provisions and regulations;

  g. Enter judgment in favor of Starling and the Texas Class members for all damages available under the Texas Commercial & Business Code, including statutory damages of $5,000 per violation, costs and expenses in prosecuting the action, and attorneys' fees;

  h. Enter judgment in favor of Hagman and the Illinois Class members for all damages available under the IATDA, 815 ILCS 305/1, *et seq.*, including actual damages, statutory, damages and attorneys' fees; and,

  i. Award Plaintiffs and the Class members such further and other relief the Court deems just and appropriate.

## **Demand For Jury Trial**

Please take notice that Plaintiffs Kimberly Starling and Nickolas Hagman demand a jury trial in this case.

RESPECTFULLY SUBMITTED,

By: */s/ Jacob U. Ginsburg*
Jacob U. Ginsburg (phv20289)
Angela K. Troccoli, Esquire, ct28597
Kimmel & Silverman, P.C.
30 E. Butler Ave.
Ambler, PA 19002
Telephone: (267) 468-5374
atroccoli@creditlaw.com
jginsburg@creditlaw.com

By: */s/ Christopher E. Roberts*
Christopher E. Roberts (phv20287)
Butsch Roberts & Associates LLC
231 S. Bemiston Avenue, Suite 260
Clayton, Missouri 63105
Telephone: (314) 863-5700
Fax: (314) 863-5711
croberts@butschroberts.com

Thomas A. Zimmerman, Jr.
(*pro hac vice* anticipated)
*tom@attorneyzim.com*
Jeffrey D. Blake
(*pro hac vice* anticipated)
*jeff@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180
www.attorneyzim.com

*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record via the Court's electronic filing system on November 28, 2021.

*/s/ Christopher E. Roberts*